UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BCBSM, INC., d/b/a Blue Cross and )<br>Blue Shield of Minnesota, )<br>)<br>    Defendant. )<br>_____ ) | CIVIL No. 24-00099 |

## **COMPLAINT**

1. Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), files this civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*, to redress violations and obtain equitable relief relating to the prohibited transactions and fiduciary breaches of Defendant BCBSM, Inc., in connection with its administration or management of ERISA-covered employee welfare benefit plans.

2. Defendant BCBSM, Inc. has for years unilaterally caused the self-funded health benefit plans for which it serves as third-party administrator to compensate BCBSM, Inc.'s in-network providers for amounts they owe under a Minnesota provider tax—amounts the providers never billed or passed on to the plans—without authority to do so under the plans' governing documents. Between 2016 and 2020, BCBSM collected at least $66.8 million from the plans for the payment of its network providers' obligations under Minnesota's provider tax. By exercising discretionary authority over the plans in this way, BCBSM, Inc. acted as a fiduciary of the plans

and violated ERISA's fiduciary standards and prohibited transaction rules by serving its own interests over those of the plans.

## PARTIES

3. The Secretary is authorized to enforce Title I of ERISA. The statute vests the Secretary with the authority to prosecute civil actions for equitable and remedial relief to restore losses to employee benefit plans resulting from fiduciary breaches, redress violations of ERISA, and enjoin any act or practice that violates ERISA. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2), (5).

4. Defendant BCBSM, Inc. d/b/a Blue Cross and Blue Shield of Minnesota ("BCBSM") is organized under the laws of Minnesota with its principal offices located in Eagan, Minnesota. BCBSM provides third-party administrative services to self-funded employee welfare benefit plans established or maintained by employers located in Minnesota to provide healthcare benefits to the plans' participants and beneficiaries. At all relevant times, BCBSM was a named fiduciary under the terms of its administrative service agreements with its self-funded plan clients. As a named fiduciary of the plans and by its actions as described herein, BCBSM is a fiduciary to the plans under ERISA section 3(21), 29 U.S.C. § 1002(21). As a fiduciary and service provider to its employee welfare benefit plan clients, BCBSM also is a party in interest to those plans pursuant to ERISA sections 3(14)(A) and (B), 29 U.S.C. §§ 1002(14)(A) and (B).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 29 U.S.C. § 1132(e)(1).

6. BCBSM resides in or may be found in this District. Venue is therefore proper in this District under 29 U.S.C. § 1132(e)(2).

## ALLEGATIONS

7. Since at least January 1, 2015, BCBSM has provided third-party administrative services to self-funded employee welfare benefit plans located in Minnesota. BCBSM currently provides third-party administrative services to approximately 370 self-funded employee welfare benefit plans located or administered in Minnesota (the "Plans").

8. The Plans are established or maintained by employers in Minnesota to provide medical, surgical, hospital care or benefits, or benefits in the event of sickness, accident, or disability. The Plans are funded through contributions from employee participants and contributions from the employers sponsoring those plans. By regulation, the employees' contributions are assets of the Plans. *See* 29 C.F.R. § 2510.3-102(a)(1). The Plans are employee benefit plans as defined by ERISA section 3(3), 29 U.S.C. § 1002(3), and are subject to coverage under Title I of ERISA pursuant to ERISA section 4(a)(1), 29 U.S.C. § 1003(a)(1).

**A. BCBSM's Discretionary Management of the Plans**

9. BCBSM is regulated, in part, under Minnesota law as a service plan corporation authorized to provide administrative services to other organizations related to rendering or furnishing health services. From January 1, 2015, through December 31, 2022, BCBSM entered into administrative service agreements ("ASAs") with employers in Minnesota to establish the Plans.

10. BCBSM separately contracts with Minnesota health care providers who agree to enter BCBSM's network of providers. As part of those agreements, the healthcare providers agree to accept negotiated rates as payment for their healthcare services.

11. Under the ASAs, BCBSM is the named fiduciary of the Plans for purposes of processing, approving, and denying claims for benefits filed by or on behalf of participants and beneficiaries of the Plans.

12. The ASAs give BCBSM discretionary authority to grant and deny claims filed by participants and beneficiaries of the Plans, and to determine the specific amount payable by the Plans.

13. BCBSM provides employers with Summary Plan Descriptions and Benefit Booklets ("SPDs") that describe the terms of the Plans and govern their administration and management. The SPDs function as the Plans' governing documents.

14. The SPDs provide that BCBSM administers claims for the Plans, including adjudicating claims and applying its medical policies to determine whether to pay those claims. As the plan administrators, the employers determine whether an employee is eligible to participate in a plan, but BCBSM is the named fiduciary for purposes of making discretionary claims determinations.

15. Under the ASAs and the SPDs, only BCBSM can exercise discretion to determine the claims paid amount based on its medical necessity review and other decisions relating to its payment arrangements with the providers.

16. Neither the ASAs nor the SPDs contain determinate provisions dictating the exact claims paid amount under the Plans. Rather, the payment criteria are open-ended, and the payment amounts are subject to variation at the sole discretion of BCBSM. However, under the ASAs, claims do not include transactions between BCBSM and any network provider where the Plans' participants and beneficiaries are not liable for any charges.

17.     Under the ASAs, BCBSM pays the claims it approves and subsequently sends an invoice to the employer for the employer to reimburse BCBSM.

**B.  The MinnesotaCare Tax**

18.     Since 1994, Minnesota has imposed a tax on the gross revenue of hospitals, surgical centers, and health care providers derived from payments for patient services ("MNCare Tax").  *See* Minn. Stat. § 295.52 (tax on gross revenue), Subd. 2; Minn. Stat. § 295.50, Subd. 3 (defining gross revenue).

19.     The liability for the MNCare Tax is imposed on the entity with the legal right to collect the gross receipts.  *See* Minnesota Dep't of Revenue, Revenue Notice 94-12 (Modified Nov. 8, 2004).  This means that the provider—not the patient or third-party payer—is the taxpayer responsible for the MNCare Tax.

20.     Minnesota law allows health care providers to transfer the MNCare Tax obligation to third-party contracts for the purchase of health care services on behalf of a patient, but the provider must specifically request the tax transfer.  *See* Minn. Stat. § 295.582, Subd. 1(a)(1); *see also* Minnesota Dep't of Commerce, Bulletin 94-3 ¶ 1 (July 18, 1994).

**C.  BCBSM Improperly Collected the MNCare Tax from the Plans**

21.     The providers in BCBSM's network did not transfer their liability for the MNCare Tax to BCBSM or the Plans, as would have been indicated had the providers included the MNCare Tax as a separate line item in their invoices (which they did not).  Rather, BCBSM unilaterally volunteered to compensate network providers for their liability under the MNCare Tax and then caused the Plans to pay the tax.

22.     Indeed, since January 1, 2015, BCBSM has added the MNCare Tax payable by its in-network providers to the amount that BCBSM charges to the Plans for the payment of claims.

5

23. After BCBSM paid the providers for the MNCare Tax for claims submitted on behalf of participants and beneficiaries of the Plans, BCBSM submitted invoices to the Plans for reimbursement. Without explicitly disclosing the MNCare Tax payment, BCBSM included in the claims paid amount the providers' MNCare Tax obligation for which BCBSM compensated the providers. BCBSM's invoices did not contain a breakdown showing BCBSM's charging the Plans for the MNCare Tax.

24. From January 1, 2016, through December 31, 2020, BCBSM collected at least $66.8 million from the Plans for the payment of its network providers' MNCare Tax obligations.

25. Nothing in the ASAs permits BCBSM to include the MNCare Tax in the claims paid amount it directed the Plans to pay.

26. The ASAs state that a claim is a request for payment of medical services. Because the MNCare Tax is not a payment for medical services, the ASAs do not authorize BCBSM to charge the Plans for the providers' MNCare Tax obligations.

27. The definition of "claim" in the ASAs also excludes transactions between BCBSM and its network providers where the Plans' participants and beneficiaries are not liable for the charges. The Plans' participants and beneficiaries are not liable for the MNCare Tax because it is not a transactional tax imposed on them. Rather, the provider bears the responsibility for paying the MNCare Tax. As such, the definition of "claim" in the ASAs does not include the MNCare Tax.

28. The definition of "claims paid" in the ASAs does not impose upon the Plans an obligation to pay the MNCare Tax.

29. The SPDs also do not permit BCBSM to collect the MNCare Tax from the Plans.

30. The SPDs identify incurred expenses of the Plans in terms of an "allowed amount," defined as the negotiated amount of payment for covered services at the time a claim is processed. The SPDs define "covered services" as a health service eligible for benefits when performed and billed by an eligible provider. Because covered services does not include a provider's tax obligations, nothing in the SPDs authorizes BCBSM to include the MNCare Tax in the "allowed amount" that the Plans are obligated to pay.

31. BCBSM also did not obtain approval from the Plans' administrators (or other independent fiduciaries) to include the MNCare Tax liability of BCBSM's network providers in the claim amounts payable by the Plans.

32. Even if a provider did specifically request that BCBSM pay the MNCare Tax, under the ASAs, the employer would be responsible for reimbursing the insurer for the tax, not the Plan. BCBSM never sought payment of MNCare Tax obligations from the employers. It rather exercised its discretionary authority over claims administration to cause the Plans to pay the providers' obligations under the MNCare Tax based on billing practices that obscured the taxes it collected from the Plans.

33. In short, without authority to do so under the ASA or SPDs, and without obtaining approval from independent fiduciaries of the Plans, BCBSM caused the Plans to reimburse BCBSM the amounts it paid to the providers for the providers' MNCare Tax obligations, and in so doing exercised authority over the assets of the Plans and discretionary authority over the management or administration of the Plans.

## CAUSES OF ACTION

### COUNT ONE
### Prohibited Transactions
### (29 U.S.C. § 1106(a)(1)(D))

34. The Secretary incorporates the allegations stated in Paragraphs 1 through 33 as if stated verbatim.

35. During the relevant time alleged in this Complaint, BCBSM exercised its discretionary authority to determine the claims paid amounts owed by the Plans based on its medical necessity review and other discretionary decisions relating to its payment arrangements with providers.

36. During the relevant timeframe alleged in this Complaint, BCBSM acted as a fiduciary of the Plans by exercising discretionary authority to cause the Plans to reimburse BCBSM for its payments of the network providers' liabilities under the MNCare Tax, without being authorized to do so by the terms of the Plans or by any independent fiduciaries of the Plans.

37. During the relevant timeframe alleged in this Complaint, BCBSM exercised control over the Plans' assets by using plan assets to compensate BCBSM for paying the MNCare Tax owed by its network providers.

38. During the relevant timeframe alleged in this Complaint, BCBSM was a party in interest of the Plans based on its status as a fiduciary and a service provider of the Plans.

39. During the relevant timeframe alleged in this Complaint, BCBSM, as a fiduciary to the Plans, caused the Plans to transfer to, or to use for the benefit of, BCBSM as a party in interest the assets of the Plans.

40. By causing the Plans to engage in the above, BCBSM caused the Plans to engage in transactions that it knew or should have known constituted direct or indirect transfers of the Plans' assets to, or use of the Plans' assets by or for the benefit of, parties in interest, in violation of ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

41. As a result of the conduct as described above, BCBSM caused losses to the Plans for which it is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

## COUNT TWO
### Prohibited Transactions
### (29 U.S.C. § 1106(b))

42. The Secretary incorporates the allegations stated in Paragraphs 1 through 33 as if stated verbatim.

43. During the relevant timeframe alleged in this Complaint, BCBSM exercised its discretionary authority to determine the claims paid amounts owed by the Plans based on its medical necessity review and other discretionary decisions relating to its payment arrangements with providers.

44. During the relevant timeframe alleged in this Complaint, BCBSM acted as a fiduciary of the Plans by exercising its discretionary authority to cause the Plans to reimburse BCBSM for its payments of the network providers' liabilities under the MNCare Tax, without being authorized to do so by the terms of the Plans or by any independent fiduciaries of the Plans.

45. During the relevant timeframe alleged in this Complaint, BCBSM exercised control over the Plans' assets by using plan assets to compensate BCBSM for paying the MNCare Tax owed by its network providers.

46. Because the Plans did not authorize BCBSM to include its network providers' MNCare Tax liability in the claim amounts payable by the Plans, BCBSM dealt with the assets of the Plans in its own interest or account when it unilaterally caused the Plans to pay for its providers' MNCare Tax liability.

47. In addition, BCBSM impermissibly acted in transactions involving the Plans on behalf of the healthcare providers in its network whose interests were adverse to the interests of the Plans or the interests of their participants and beneficiaries. While acting for the Plans as their third-party administrator in paying claims, BCBSM simultaneously did the bidding of its in-network providers by causing the Plans to pay its providers MNCare taxes without the Plans being obligated or authorizing BCBSM to do so. From a financial perspective, the interests of the Plans and their participants are adverse to those of the healthcare provider payees in BCBSM's network: the Plans' interests are directed, in part, to preserving plan assets, *see* 29 U.S.C. § 1104(a)(1)(A)(ii); the healthcare providers' interests are to obtain payment from the Plans.

48. By causing the Plans to engage in the above, BCBSM:

   a. dealt with the assets of the Plans in its own interest or for its own account, in violation of ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1); and

   b. acted in transactions involving the Plans on behalf of a party (or represented a party) whose interests are adverse to the interests of the Plans or the interests of their participants or beneficiaries, in violation of ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2).

49. As a result of the conduct as described above, BCBSM caused losses to the Plans for which it is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

## COUNT THREE
### Breach of Fiduciary Duties
### (29 U.S.C. § 1104(a)(1)(A))

50.     The Secretary incorporates the allegations stated in Paragraphs 1 through 33 as if stated verbatim.

51.     During the relevant timeframe alleged in this Complaint, BCBSM exercised its discretionary authority to determine the claims paid amounts owed by the Plans based on its medical necessity review and other discretionary decisions relating to its payment arrangements with providers.

52.     During the relevant timeframe alleged in this Complaint, BCBSM acted as a fiduciary of the Plans by exercising its discretionary authority to cause the Plans to reimburse BCBSM for its payments of the network providers' MNCare Tax liabilities, without being authorized to do so by the terms of the Plans or by any independent fiduciaries of the Plans.

53.     During the relevant timeframe alleged in this Complaint, BCBSM exercised control over the Plans' assets by using plan assets to compensate BCBSM for paying the MNCare Tax owed by its network providers.

54.     Fiduciaries are bound by the duty of loyalty to the participants and beneficiaries of employee benefit plans when administering or managing those plans.  Fiduciaries are prohibited from acting in their own interest when administering or managing employee benefit plans and when dealing with the participants and beneficiaries of those plans.

55.     By causing the Plans to reimburse BCBSM for payment of the MNCare Tax liability of its network providers, even though the Plans did not authorize such payments, BCBSM failed to discharge its duties with respect to the Plans solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits

and defraying reasonable expenses of plan administration, in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

56. As a result of the conduct as described above, BCBSM caused losses to the Plans for which it is liable pursuant to ERISA section 409(a), 29 U.S.C. § 1109(a).

**PRAYER FOR RELIEF**

Based on the allegations and causes of action stated in this Complaint, the Secretary prays that this Court enter an Order:

1. Requiring BCBSM to restore all losses caused to the Plans as a result of BCBSM's prohibited transactions and fiduciary breaches;

2. Requiring BCBSM to disgorge to the Plans all unjust enrichment and profits it received as a result of its prohibited transactions and fiduciary breaches;

3. Enjoining BCBSM from engaging in the prohibited transactions and fiduciary breaches alleged in this Complaint; and,

4. Granting such other relief as may be equitable, just, or proper.

Dated:  January 12, 2024

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

WAYNE BERRY
Associate Solicitor
Plan Benefits Security Division

JEFF HAHN
Counsel for Appellate and Special Litigation
Plan Benefits Security Division

DANA FLORKOWSKI
Trial Attorney

/s/Geoffrey Forney
GEOFFREY FORNEY
Trial Attorney
PA 202870; ME 006734; NJ 036232006

United States Department of Labor
200 Constitution Ave. NW, N-4611
Washington, DC 20210
202-615-8315/ forney.geoffrey.d@dol.gov

Attorneys for Plaintiff

13