## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Julia A. Su, Acting Secretary of Labor, | Case No. 24-cv-00099 (JRT-TNL) |
| Plaintiff, | |
| v. | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT** |
| BCBSM, INC., d/b/a Blue Cross and Blue Shield of Minnesota, | |
| Defendant. | |

## **INTRODUCTION**

DOL's opposition in response to Blue Cross's moving memorandum confirms that the parties agree on the contractual documents relevant to determining the motion to dismiss. Thus, the Court has what it needs to resolve the case now – *in Blue Cross's favor*. In light of the contracts and a correct reading of the law: DOL lacks standing; Blue Cross is not a fiduciary and therefore not suable under (what DOL now admits are) exclusively fiduciary-oriented claims in the complaint; and Blue Cross – even if it was a fiduciary – engaged in no violation of plan terms that constitutes a fiduciary breach or other unlawful fiduciary conduct.

With DOL lacking standing and having no cognizable claim, the Court must dismiss the complaint, whether under Rule 12(b)(1) or 12(b)(6). In so doing, the Court ends a controversy having no practical effect, deters DOL's effort to miscast a non-fiduciary as a fiduciary, and avoids opening a Pandora's Box where anyone simply paid

from ERISA-plan funds potentially becomes an ERISA fiduciary subject to DOL's copious regulation.

## ARGUMENT

### I. DOL LACKS STANDING TO PURSUE THE COMPLAINT

DOL lacks standing because, if Blue Cross had followed DOL's preferred billing method of itemizing the providers' MNCare Tax expense, it is highly speculative – and therefore constitutionally impermissible – to assume that ERISA plans would not have paid the same amounts they paid. Because no injury transpired from Blue Cross's actions, DOL has no Article III standing to sue on plans' behalf. *See* Blue Cross's Moving Memorandum at 14-17 (Doc.11) [hereinafter "Mem."].[1]

In response, DOL does not dispute the legal principles on standing that Blue Cross puts forth. DOL's sole rebuttal is that, as a factual matter, plans would not have agreed to pay their share of the provider's allowed amount that included the Tax expense, if itemized as the DOL prefers, because the contractual documents supposedly contain "no requirement to do so." DOL Opposition Memorandum at 11 (Doc.24) [hereinafter "Opp."]. In reality, the contractual documents *do* require plans to make this payment because the contract language fixes plan payments on the allowed amounts Blue Cross "negotiated" with providers, and the MNCare Tax expense incontestably is subsumed within the allowed amount Blue Cross negotiated with providers. Mem.28. Indeed, the SAs, in no uncertain terms, require plans to pay what Blue Cross paid on their behalf to

---

[1] This Reply follows the shorthands from Blue Cross's Memorandum, *e.g.,* Blue Cross's Service Agreements with plans are "SAs," etc.

providers or be in breach. *See id.* at 6-7; *see infra* pp.8-11 (addressing further DOL's erroneous construction of SAs). Accordingly, the Court's very jurisdiction – and a simple, yet mandatory, route under Rule 12(b)(1) for resolving this case – turns on what undisputed contractual documents require. DOL comes out on the losing side.

## II. DOL HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE THE UNAMBIGUOUS CONTRACT TERMS DEMONSTRATE NO BREACH OF ANY FIDUCIARY DUTIES

### A. The Contracts' Terms Control Over DOL's Contrary Allegations

In a theme pervading its opposition, DOL seeks to divorce its case from the three sets of contractual documents (SAs, SPDs, and Blue Cross's provider network contracts) that it embraced in its complaint, asserting that Blue Cross's constructions of them are contrary to DOL's allegations in the complaint. *E.g.*, Opp.11-13, 16-19. Rule 12(b)(6) and Eighth Circuit precedent mandate rejection of DOL's retreat from the contracts that *DOL* incorporated into its complaint as the basis for its allegations.

The standard is that contractual materials referenced in the complaint become part of the pleadings and are considered in ruling on a Rule 12(b)(6) motion. *See* Mem.13-14. A corollary of this standard is that a court may grant a Rule 12(b)(6) motion based on those contracts' terms "even if contract documents not attached to the complaint *refute* a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (emphasis added). Here, the terms of the SAs, SPDs, and provider contracts do not support DOL's construction. In exchange for plan beneficiaries' access to Blue Cross's network, plans agreed to pay Blue Cross based on the allowed amounts "negotiated" with providers, *see*

3

Mem.6-8; Opp.19, and the allowed amount Blue Cross negotiated with providers includes providers' MNCare Tax expense. *See* Mem.9; Opp.6.

Further, DOL nowhere asserts that the Court has before it the wrong or unrepresentative contracts or is missing contracts on which DOL's allegations are based. Proving Blue Cross got things right when providing to the Court the documents embraced by the complaint, DOL merely adds another part of the network provider agreement, albeit uneventful for its case, *see infra* p.10-11 n.3, and a complete SPD rather than contesting anything Blue Cross submitted. *See* Opp.6-7 n.3. In sum, the Court has before it the necessary contract language to resolve as a matter of law the motion to dismiss, under Rule 12(b)(6) (and, by extension, Rule 12(b)(1), *see* Mem.13-14; Opp.8).

### B. The Governing Contracts' Terms Dispatch DOL's Arguments that Blue Cross Is a Fiduciary Based on Discretion or Controlling Plan Assets

DOL confirms that all of its allegations are fiduciary-based – *i.e.*, that fiduciary status for Blue Cross is a necessity for DOL's allegations to proceed. *See* Opp.26-27. But DOL then goes awry, resting on implausible allegations of fiduciary status. "A claim is facially plausible if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zean*, 858 F.3d at 525 (cleaned up). Here, applicable contract language does not reasonably support any inference that Blue Cross is a fiduciary.

DOL asserts that Blue Cross is a "named" fiduciary concerning the conduct pertinent to the complaint. Opp.16. The contracts defeat that assertion. Blue Cross is a named fiduciary only with respect to "Claims," not "Claims Paid," terms defined in the

SAs.  *See* Mem.6, 8, 19-20.  The distinction is dispositive, because the complaint does not concern *whether* a claim is payable (the domain of the definition of Claim), but *the amount* to invoice the plan on a payable claim (the domain of the definition of Claims Paid).  DOL concedes there is a distinction between Claims and Claims Paid – as it must, given that the SAs define the terms separately.  Opp.3-4, 18.  But it illogically then seeks to extend the fiduciary status Blue Cross has with respect to adjudicating Claims to the non-fiduciary, ministerial role Blue Cross has in invoicing plans the Claims Paid amount.

The faultiness of DOL's logic is particularly laid bare when one considers how unworkable Blue Cross's building and making networks available would become if it were a fiduciary with respect to Claims Paid.  Under ERISA, a fiduciary must act in the interests of beneficiaries and limit plan costs.  *See* 29 U.S.C. § 1104(a)(1)(A).  No network service provider anywhere, including Blue Cross, could negotiate a standard network and uniform pricing for its products, if it were a fiduciary with respect to *each* individual ERISA-plan client as to the Claims Paid amount.  Blue Cross would have to analyze the needs of each and every plan to ensure that each plan uniquely gets the best pricing arrangement from network providers based on that plan's size and beneficiaries' age, geography, and other demographics.  Pooling all plans' needs (ERISA and non-ERISA, insured and self-funded alike) to obtain the best overall negotiated allowed amount in furtherance of uniformity and ease of administration would be forbidden.  The result would be ERISA-mandated plan-specific networks and plan-specific pricing, entailing a massively complex and expensive process that would obliterate the financial and administrative efficiencies gained by utilizing a network service provider.  *Accord*

5

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 328 (1st Cir. 2023) (noting that imposing fiduciary status on a TPA with respect to its claims pricing would "come at a steep price to plans and their participants").

Not only is DOL's position unworkable, it contravenes the SAs' terms. The SAs verify that plans sought access and agreed to Blue Cross's network as developed by Blue Cross for its own purposes, knowing that "Blue Cross has entered or may enter into agreements with Providers…. In negotiating, contracting, or enforcing these agreements, Blue Cross owed no duties or obligations to Employer. … Blue Cross *is not Employer's agent with respect to these agreements.*" Mohs Decl., Ex.1 at 4, 10-11 (Doc.14) (emphasis added). There is no construction of these SA terms that supports DOL's stretching Blue Cross's named fiduciary status for Claims to include Blue Cross's relationship to network providers and accompanying billing to plans of Claims Paid.

After wrongly characterizing Blue Cross as a *named* fiduciary for Claims Paid, DOL next presses its theory that Blue Cross is a *functional* fiduciary, lumping everything at issue in the complaint as constituting the exercise of "discretion" and controlling plan assets. *See* Opp.17-22. Blue Cross established why its actions relevant to this case fit none of the criteria for functional-fiduciary status under ERISA. *See* Mem.21-28. Only two points warrant further elucidation.

First, DOL's sole basis for asserting Blue Cross exercised discretion is that Blue Cross's invoices to plans for Claims Paid included the MNCare Tax expense, when the contractual documents supposedly did not authorize such action. *See* Opp.17-21. But the contracts require Blue Cross to invoice plans for the amount "negotiated" with providers,

6

which includes the Tax expense, and require plans to reimburse Blue Cross for the amounts Blue Cross paid.  *See* Mem.6-7, 9; *infra* pp.8-11.  A separate provision in the SA raised by DOL (Opp.19), which obligates plans to reimburse Blue Cross for amounts paid for certain taxes, including "provider taxes," does not negate Blue Cross's ability to negotiate rates with providers without approval from plans.  That taxes – when not foreseen and not encompassed in providers' negotiated pricing – might *still* be payable by plans under a separate contractual mechanism is of no moment.

Second, DOL's story on Blue Cross's supposed handling of plan assets is especially feeble, citing no authority for the remarkable proposition that money somehow remains plan assets once it leaves a plan's treasury to pay for another's services.  Perhaps there are no authorities because DOL's proposition would mean that every vendor paid by an ERISA plan – whether a TPA, lawyer, accountant, bookkeeper, bank, or a janitor employed by the plan – becomes a fiduciary merely upon receiving payment for services.  In any event, the SAs' terms once more foreclose DOL's position:  "Employer will reimburse Blue Cross from *its general assets* for all charges (Fixed and Weekly) due as set forth under Exhibit A or elsewhere under this Agreement.  *No funds which are transferred or to be transferred to Blue Cross will be considered Plan assets*."  Mohs Decl., Ex.1 at 23 (emphasis added).

### C. There Is No Plausible Allegation of a Fiduciary Breach

Even assuming Blue Cross is a fiduciary, DOL has failed to state a cognizable claim because it has not plausibly alleged a fiduciary breach or prohibited fiduciary transaction.  *See* Mem.28-31.  DOL's theory of the case remains that Blue Cross's

7

allegedly unlawful conduct consists of violating plan terms – *i.e.*, the terms of the contractual documents (SAs and SPDs) embraced in the complaint – when including in amounts it invoiced to plans the providers' MNCare Tax expense. *See* Opp.23. These allegations are implausible because the straightforward contract terms authorized Blue Cross to invoice what it did, and the MNCare Tax statute validates that Blue Cross could do so.

With respect to what the contracts authorize Blue Cross to charge plans, DOL does not contest that the SAs and SPDs permit – in fact, require – Blue Cross to invoice the "'*negotiated amount* of payment that the in-network provider has agreed to accept as full payment for a covered service at the time a claim is processed.'" Opp.19 (quoting SPD) (emphasis altered). Nor does DOL dispute that the allowed amount Blue Cross *negotiated* with providers includes the MNCare Tax expense. *See id.* at 6 ("Under [its provider] contracts, BCBSM *agreed to compensate* its Participating Providers for the MNCare Tax.") (emphasis added). Instead, DOL maintains that, while negotiated and part of the providers' agreement with Blue Cross, the Tax expense is not part of the reimbursement for the provider's covered services, but, rather, some voluntary, foreign amount untethered from those services. *See id.* at 19.

DOL's assertion is nonsensical. As shown in the Provider Manual and Master Service Agreement, the reimbursement for the Tax is part of "payment in full" for "Health Services." *See* Mem.8-9. Essentially, providers agree to a price point at which they cannot directly charge the Tax to either plans or members outside the allowed amount negotiated with Blue Cross for its services. There is no separate contract

8

between Blue Cross and providers other than this network agreement, which plans take advantage of by entering into SAs with Blue Cross.

Inconsistently, DOL thinks, in effect, that the allowed amount for medical services can encompass some expenses related to a provider's overhead, but not others. On one hand, DOL seemingly accepts that the providers' negotiated prices for medical services might reflect most inputs, like the cost of office space; staff labor costs; equipment and devices; OSHA fees; employment, income, and corporate taxes; office furniture; cleaning services; etc. On the other hand, one overhead expense – the MNCare Tax – *cannot*, DOL alleges, be considered part of the provider's price for medical services. Yet, DOL proffers no viable legal standard that demands distinction between the provider's overhead of the Tax from everything else. Certainly, its assertion that the Tax is exacted on providers (*see id.* at 5) is not a distinguishing feature, as every form of provider overhead is experienced singularly in the first instance by the provider. Moreover, to accept DOL's assertion would require the Court to ignore the longstanding, controlling decision DOL nowhere even attempts to address, *Boyle v. Anderson*, 68 F.3d 1093 (8th Cir. 1995). There, the Eighth Circuit described the MNCare Tax as just another form of overhead that providers may "pass on" in "their charges," no differently than "costs…involved in disposal of hazardous chemicals, compliance with OSHA standards[, and…] state unemployment compensation taxes, payroll taxes, and property taxes." *Id.* at 1107.

The legal hook DOL erroneously uses to distinguish the Tax from other overhead is a purported limitation in the MNCare Tax statute. *See* Opp.19; *see also* Compl. ¶20.

9

But DOL misapplies the statute. DOL emphasizes one method for how the Tax may be transferred by providers – *i.e.*, when the provider "specifically request[s] the tax transfer." Opp.5 (citing Minn. Stat. §295.582, Subd. 1(a)(1)). It grudgingly recites only once, without comment, a *second* statutory option by which a provider can recoup the Tax expense. This second option, which is not limited by anything else in Section 295.582, states that "[p]roviders may also recover their [T]ax obligation by other methods, *such as by 'increasing fees or charges.'*" Opp.5 (quoting Minn. Stat. §295.582, Subd. 1(e)) (emphasis added); *accord* Mem.10. In essentially ignoring this provision, which the Court cannot, DOL also disregards *Boyle*. *Boyle* states that "[i]f providers use the method of increasing their charges for health care services, third-party purchasers do not receive a separate itemized charge for the provider tax, but they have to pay greater amounts for the services than they would have before the passage of MinnesotaCare." 68 F.3d at 1098. That is exactly what is at play here.

The MNCare Tax statute, then, authorizes providers to negotiate their Tax expense as part of their compensation for services (like all other overhead), and *Boyle* endorses providers simply raising their prices – without any special billing itemization – to obtain reimbursement for their Tax payments. In turn, Blue Cross and providers implemented this method in their network contracts, *see* Mem.8-9, and the SAs made the benchmark for plans' payment what Blue Cross negotiated with providers.[2]

---

[2] DOL references a separate Provider Manual provision that authorizes a different method of billing the Tax pursuant to the first statutory method. *See* Opp.6. But Blue Cross and

The Eighth Circuit in *McCaffree Financial Corp. v. Principal Life Insurance Co.*, 811 F.3d 998 (8th Cir. 2016), sanctioned a similar dynamic, whereby a service provider engages in no fiduciary infraction when a plan incorporates into its terms a payment benchmark based on the service provider's incurred costs and the service provider then charges the plan exactly what it incurs. "[A] service provider's adherence to its agreement with a plan administrator does not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process." *Id.* at 1003. DOL's only retort regarding *McCaffree* is to circle back to its complaint allegation that Blue Cross's actions were contrary to plan terms. *See* Opp.21. But the facts as alleged, when contrary to the documents embraced by the complaint, cannot be credited to overcome dismissal.

Finally, Blue Cross's position on the applicable contract terms as authorizing exactly what it invoiced needs only to be a "'reasonable'" construction, not a perfect one or even the best one (although it is that, too). Mem.29 n.2 (quoting *Peterson v. UnitedHealth Grp., Inc.*, 913 F.3d 769, 776 (8th Cir. 2019)). Given that all parts of DOL's case – from standing, to fiduciary status, to the existence of a breach – depend on a violation of plan terms, Blue Cross's reasonable (and ultimately correct) construction of the relevant plans' terms ends the matter.

## CONCLUSION

The Court should grant Blue Cross's Motion to Dismiss the Complaint.

---

providers opted for the second statutory option to negotiate compensation for the Tax expense as part of their payment in full for services performed.

11

           Respectfully submitted,

           **BASSFORD REMELE**
           *A Professional Association*

Dated: May 6, 2024      By:  */s/ Danielle W. Fitzsimmons*
                                Kevin P. Hickey (#202484)
                                Danielle W. Fitzsimmons (#391130)
                                Peggah Navab (#402767)
                                100 South Fifth Street, Suite 1500
                                Minneapolis, MN  55402
                                Telephone: (612) 333-3000
                                khickey@bassford.com
                                dfitzsimmons@bassford.com
                                pnavab@bassford.com

           Anthony F. Shelley (*Admitted Pro Hac Vice*)
           Rebecca Tweedie (*Pro Hac Vice motion submitted*)
           **MILLER & CHEVALIER CHARTERED**
           900 16th Street NW
           Black Lives Matter Plaza
           Washington, DC 20006
           Telephone: (202) 626-5800
           ashelley@milchev.com

           *Attorneys for BCBSM, INC., d/b/a Blue Cross and Blue Shield of Minnesota*